CITY OF MILWAUKEE, Appellant, vs. RITZOW and another, Respondents.

*September 19—October 6, 1914.*

*Workmen's Compensation Act: Reduction in compensation: "Permanent injury."*

The provision in sub. 5 of sec. 2394—9, Stats., that "in case of permanent injury to an employee who is over fifty-five years of age, the compensation herein shall be reduced by five per cent.," etc., does not apply to a case where the injury results in death and the compensation is payable to dependents.

MARSHALL and VINJE, JJ., dissent.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Charles Ritzow, a married man, about eighty years of age, October 3, 1913, while working in the city of Milwaukee, within the protection of the Workmen's Compensation Act, received a personal injury, resulting in his death. In due course the *Industrial Commission* awarded *Mrs. Ritzow,* his widow, an amount equal to four times his last average annual earnings, with directions as to manner and time of payment. In due proceedings before the circuit court aforesaid to test the validity of such award, it was affirmed. This appeal is from the judgment accordingly entered.

The cause was submitted for the appellant on the brief of *Daniel W. Hoan,* city attorney, and *Eugene L. McIntyre,* assistant city attorney, and for the respondents on that of the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, attorneys for the *Industrial Commission of Wisconsin.*

PER CURIAM. What is the scope of the term "permanent injury" in sub. 5 of sec. 2394—9, Stats., providing for a reduction on account of the age of the deceased, of the compensation for loss to his surviving dependents?

The section, omitting a minor schedule, where indicated, is as follows:

"*Scale of compensation.* Section 2394—9. Where liability for compensation under sections 2394—3 to 2394—31, inclusive, exists, the same shall be as provided in the following schedule:

"(1) Such medical, surgical and hospital treatment, medicines, medical and surgical supplies, crutches, and apparatus, as may be reasonably required at the time of the injury and thereafter during the disability, but not exceeding ninety days, to cure and relieve from the effects of the injury, the same to be provided by the employer; and in case of his neglect or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employee in providing the same.

"(2) If the accident causes disability, an indemnity which shall be payable as wages on the eighth day after the injured employee leaves work as a result of the injury, and weekly thereafter, which weekly indemnity shall be as follows:

"(a) If the accident causes total disability, sixty-five per cent. of the average weekly earnings during the period of such total disability; provided that, if the disability is such as not only to render the injured employee entirely incapable of work, but also so helpless as to require the assistance of a nurse, the weekly indemnity during the period of such assistance after the first ninety days shall be increased to one hundred per cent. of the average weekly earnings.

"(b) If the accident causes partial disability, sixty-five per cent. of the weekly loss in wages during the period of such partial disability.

"(c) If the disability caused by the accident is at times total and at times partial, the weekly indemnity during the periods of each such total or partial disability shall be in accordance with said subdivisions (a) and (b), respectively.

"(d) Said subdivisions (a), (b) and (c) shall be subject to the following limitations:

"In case of temporary or partial disability aggregate indemnity for injury to a single employee caused by a single accident shall not exceed four times the average annual earn-

ings of such employee, and in case of permanent total disability aggregate indemnity for injury to a single employee caused by a single accident shall not exceed six times the average earnings of such employee.

"Total blindness of both eyes, or the loss of both arms at or near the shoulder, or of both legs at or near the hip, or of one arm at the shoulder and one leg at the hip, shall constitute permanent total disability.    This enumeration shall not be exclusive but in other cases the commission shall find the facts.

"The aggregate disability period shall not, in any event, extend beyond fifteen years from the date of the accident.

"The weekly indemnity due on the eighth day after the employee leaves work as the result of the injury may be withheld until the twenty-ninth day after he so leaves work; if recovery from the disability shall then have occurred, such first weekly indemnity shall not be recoverable; if the disability still continues, it shall be added to the weekly indemnity due on said twenty-ninth day and be paid therewith.

"If the period of disability does not last more than one week from the day the employee leaves work as the result of the injury, no indemnity whatever shall be recoverable.

"(3) Where death proximately results from the injury and the deceased leaves a person or persons wholly dependent upon him for support, the death benefit shall be as follows:

"(a) In case the injured employee was permanently totally disabled, a sum equal to four times his average annual earnings, but which, when added to the disability indemnity paid and due at the time of death, shall not exceed six times his average annual earnings.

"(b) In case the injured employee was not permanently totally disabled, such sum which, when added to the disability indemnity paid and due at the time of his death, shall equal four times his average annual earnings.

"(4) If death occurs to an injured employee other than as a proximate result of the accident, before disability indemnity ceases, death benefit shall be as follows:

"(a) Where the accident proximately causes permanent total disability, it shall be the same as if the accident had caused death.

"(b) Where the accident proximately causes permanent

partial disability, liability shall exist for such benefit as shall. fairly represent the proportionate extent of the impairment of earning capacity in the employment in which the deceased was working at the time of the accident or other suitable employment, caused by such disability.

"(c) In case the deceased employee leaves no one wholly dependent upon him for support, but one or more persons partially dependent therefor, the death benefit shall not exceed four times the amount devoted by deceased, during the year immediately preceding his death, to the support of such dependents and shall be apportioned according to the percentage that the amount devoted by the deceased to the support of such person or persons, for the year immediately prior to the accident, bears to the average annual earnings of the deceased.

"(d) If the deceased employee leave no person dependent upon him for support, and the accident proximately causes death, the death benefit shall consist of the reasonable expense of his burial, not exceeding one hundred dollars.

"(e) Death benefit shall be paid in weekly instalments corresponding in amount to sixty-five per cent. of the weekly earnings of the employee, until otherwise ordered by the commission.

"(5) In cases included by the following schedule, the compensation to be paid, subject to the provisions of this act for maximum and minimum payments, shall be sixty-five per cent. of the average weekly earnings of the employee for the periods named in the schedule, to wit: (Schedule omitted.)

"When by reason of infection or other cause not due to the neglect or misconduct of the injured employee, he is actually disabled longer than the time specified in the foregoing schedule from earning a wage, compensation shall be paid such employee for such loss of wage within the limits otherwise provided.

"For the purposes of this schedule permanent and complete paralysis of any member shall be deemed equivalent to the loss thereof.

"Whenever an amputation is made between any two joints mentioned in this schedule (except amputation between the knee and hip joint) the resultant loss shall be estimated as if the amputation had been made at the joint nearest thereto.

"In all other cases in this class the compensation shall

bear such relation to the amount stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule.

"If an employee is seriously permanently disfigured about the face or head, the commission may allow such sum for compensation on account thereof, as it may deem just, not exceeding seven hundred fifty dollars.

"*In case of permanent injury to an employee who is over fifty-five years of age, the compensation herein shall be reduced by five per cent.; in case he is over sixty years of age, by ten per cent.; in case he is over sixty-five years of age, by fifteen per cent.*

"(a) Where injury is caused by the failure of the employer to comply with any statute of the state or any lawful order of the industrial commission, compensation as provided in sections 2394—3 to 2394—31, inclusive, shall be increased fifteen per cent.

"(b) Where injury is caused by the wilful failure of the employee to use safety devices where provided by the employer, or

"(c) Where injury results from the employee's wilful failure to obey any reasonable rule adopted by the employer for the safety of the employee, or

"(d) Where injury results from the intoxication of the employee, the compensation provided herein shall be reduced fifteen per cent.

"(e) Any time after six months have elapsed from the date of the injury, the commission may order payment in gross or in such manner as it may determine to the best interest of the parties. When payment in gross is ordered, the commission shall fix the gross amount to be paid based on the present worth of partial payments, considering interest at three per cent. per annum."

Respondents contended, and still insist, that the words "permanent injury" do not refer to cases of resulting death and that death benefits are not within the reduction feature; while appellant contended, and still insists, that the scope of such words includes permanent injuries regardless of whether the resulting loss to be repaired is that of surviving relatives, or that of the injured person. The former prevailed and judgment was rendered accordingly.

While the point raised is not entirely free from difficulty, it is considered that the terms "injury," "permanent injury," "disability," "permanent disability," and "permanently totally disabled" are descriptive of a class of events creating a right to compensation to the injured one; and that injury resulting proximately or otherwise, or followed by, death, covered by sub. 3 and 4, constitute a separate and distinct class of events where the compensation goes to dependents, and that it is to the former only that the words "the compensation herein" "shall be reduced," etc., apply.

While it may be there is greater reason for reducing compensation to dependents in the circumstances under consideration than for reducing that of a surviving injured person, yet it was so easy for the legislature to have said "in case of a permanent injury to an employee who is over fifty-five years of age the compensation herein," . . . whether to him or his dependents in case of his death in the circumstances mentioned in sub. 3 and 4, "shall be reduced," etc., the failure to do so or to otherwise make unmistakable that which must have been appreciated to be a serious matter in case of being involved in doubt, the court is inclined to the view that the term "permanent injury" was used in the sense ordinarily accorded thereto in circumstances giving rise to a claim of the injured person to have his loss compensated, and should not be expanded by construction, merely because, where death results, the injury is necessarily permanent and the reason of the statute as to reduction of compensation applies stronger to the condition not included in its strict letter than to that which is.

The judgment is affirmed.

The following opinion was filed November 7, 1914:

MARSHALL, J. (*dissenting*). The meaning the court ascribes to that part of the act in question is so contrary, as it seems to me, to reason and common sense and in conflict with the policy of the unwritten law, and still more of the written,

that I cannot concur in it, much as I dislike to stand apart from my associates and incline to defer to their convictions where, to my mind, there is room for doing so.

By the former law compensation of a dependent relative for having been, by the negligence of another, deprived of support, as in this case, was the equivalent in money of such dependent's reasonable expectation of pecuniary benefits from a continuance of the supporter's life, and the compensation recoverable by the injured person, he surviving, was not so limited. So compensation in the former situation, necessarily, was affected in far greater degree by the age of the person injured than in the latter. As I understand it, that is not even doubted, nor but that, when the Workmen's Compensation Act was framed, the thought was, as near as practicable, to repair the real pecuniary loss caused by a personal injury. That, necessarily, contemplated eliminating, as to the injured person, the compensable elements, by the old system which were too conjectural to be measured by any definite standard, putting such person and his dependents in one class, as regards the substructive basis for requition. Such must be the case. One would hardly venture the contrary. Could there be any possible reason for increasing the compensation to dependents so as to extend it beyond the basis of actual pecuniary loss, violating the central dominating idea of all compensation acts by penalizing employers, and, at the same time, eliminate many substantial compensable elements as to persons injured—*ex industria*—confining it to those for which some reasonably definite basis for measuring exists or can be created and applied? I cannot join in convicting the legislature of such unreasonable action, or of so failing to express its real purpose, that we must take its language literally, regardless of the absurdity, instead of for what was meant, however reasonable that may be in contrast with literal sense.

There are many useful rules for judicial construction. If there were not, often the legislative purpose would fail of

being carried out, and many very good enactments would be very bad laws in fact and, in some cases, void for uncertainty. Such instrumentalities are at hand whenever un-certainty of meaning exists, either arising directly from the words of an enactment or in applying it to the subject with which it deals. When, by making such application, though the words in themselves, are plain, the result is so unreason-able or absurd as to lead to the belief that the lawmakers never intended it, ambiguity arises, calling just as loudly and efficiently for judicial construction as when uncertainty of meaning arises directly from the words of a law. This court, and all courts, have often so declared. I venture to say the principle is elementary.

*State ex rel. McGrael v. Phelps,* 144 Wis. 1, 8, 128 N. W. 1041, is a good example of the foregoing. True, the very absurdity of the law, viewed in its literal sense, required its reading in the light of its purpose and in that way a reason-able effect was given to it. The court said:

"The legislature could not have had in mind such an ab-surdity, yet, there is no way to avoid the result except by judicial construction; that ever-ready and indispensable in-strumentality for use in remedying legislative inadvertences and want of appreciation of the importance, in making writ-ten law, of speaking with language of unmistakable meaning in the literal sense of words. If it were not for judicial power to give effect to ideas, however obscurely expressed, if yet not so hidden as to be undiscoverable,—in view of the objects designed to be attained, the circumstances dealt with, the consequences of a literal or too literal interpretation, and many other lights that might be mentioned,—and not so out of harmony with the sense of the language used as not to be readable therefrom; giving thereto the widest reasonable scope; supplying all words reasonably suggested as in place by those used; eliminating or changing those clearly im-properly used and transposing words or clauses, if necessary from proper to improper locations,—much legislation would fail."

And further: "A highly unreasonable purpose . . . is never to be attributed to the lawmaking power if that can

reasonably be avoided. It must be presumed as to a written law that some sensible legal end and some sensible legal means of accomplishing that end, were in view. Therefore" in face of an apparent unreasonable or absurd situation "the court should not tire of searching for its purpose and some sensible way of so translating the legislative language as to express it, without having exhausted all judicial power to that end."

That is a very old doctrine. "A thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers." *People ex rel. Att'y Gen. v. Utica Ins. Co.* 15 Johns. 358, 381.

Notwithstanding the principles stated have been often declared by this court, there have been some instances where, seemingly, they have been overlooked. In my judgment this case adds another. Respect for the unwritten law as molded and administered by courts, depends upon regularity of judicial action. Consistency is no less a jewel in that field than in any other. If unreasonableness or absurdity is to be avoided by construction in some cases, it should be in all where practicable. The fact that the words to be dealt with are plain, affords no warrant, necessarily, for want of constructive activity. The court very early laid down the rule that words, plain in themselves, are to be so taken; if that does not lead to absurd or very unreasonable consequences, then some different meaning is to be sought for.

Now, if I concede, which I do not, that the Workmen's Compensation Act, in its literal sense, is in harmony with the decision, it seems plain that the court has evinced rather too much readiness to adhere to mere words and assume that the legislature intended a very narrow meaning thereof because the broader meaning could have been readily expressed. The court rested in its labor too quick. It failed to give deserved effect to the manifest unreasonableness which could have been easily avoided, as I will endeavor to show.

It will be noted that the word "compensation," as used in the opening lines of the law, refers to all cases of loss from a personal injury. It points to all "in the following schedule." Note that "schedule," is used in the singular, though each subsection has at least one schedule. In the whole, it is plain that the several parts containing several schedules are but minor elements forming the "schedule" mentioned in the opening lines, and that the degrees of liability covered by the several subsections were designed to measure out the money equivalent for the injury, whether causing disability, partial disability, total disability, or permanent disability, under sub. 2, and so going to the injured one, or causing death and so going to surviving dependents under sub. 4, or causing loss of some part of the person injured, he surviving, and so going to such person. All parts of the section deal with the compensation *which shall be consequent upon the injury.* So the money equivalent for the loss suffered is as much compensation for the injury when it goes to a dependent as when it goes to an injured person. Why is not that the plain intent and meaning of the statute?

Now look at the particular language:

"In case of permanent injury to an employee who is over fifty-five years of age, the compensation herein shall be reduced by five per cent.; in case he is over sixty years of age, by ten per cent.; in case he is over sixty-five years of age, by fifteen per cent."

Note that the term "permanent injury" is nowhere else used. Is it not quite clear, considering the whole scope of the subject the legislature dealt with, that it had in mind, injury causing permanent disability, whether partial or total, dealt with in sub. 2, and injury, death resulting, proximately or otherwise, dealt with in sub. 3, and injury causing deprivation of some part of the person, dealt with in sub. 5?

Is it not significant that the sliding scale was of "the com-

pensation herein" referring to any circumstance of permanent injury creating liability for compensation, whether to the injured one or to a surviving dependent?

Why restrict the meaning of the words to the person injured, thus giving the law an unreasonable effect, when, viewed broadly, they easily apply to liability to recompense surviving dependents for the permanent injury involving, or causing, proximately or otherwise, death?

If the legislature intended to use the words in question in a sense restricted to cases of compensation to the injured person, can it be well doubted that it would have said,—Compensation herein to the injured person, instead of using the term "compensation herein," suggesting, naturally, the compensation equivalent for loss consequent upon the injury, regardless of the person entitled thereto? As before indicated it must be borne in mind that the real purpose was to requite for loss, and that the word "injury" is merely descriptive, broadly, of the circumstance characterizing the loss. This seems very plain to me and if I have not made it plain of record, demonstrating from my point of view it was my duty to dissent from the decision rendered, I cannot do so by further discussion.

By reference to the reason why the legislature added, at the session of 1913, the provision in question to the Workmen's Compensation Law, its real purpose, as I have read it therefrom, is easily reduced to matter of demonstration. In the official print distributed by the *Commission,* we are inferentially informed that the legislature made the change, adopting the *Commission's* reasons therefor. Here is the latter's language, and we may safely assume, the explanatory language of the legislature:

"This provision is not found in the law of 1911. It is put in this act by way of experiment. It has been found in England and other countries that aged workmen are discriminated against under the compensation act because employers feel that they are more subject to accident and are slower of recovery from accident. This provision in a measure tends

to equalize conditions. So far as the workman is concerned, it carries out the theory of damages under the common law; that is, a young man under the common law would be entitled to more damages in case of permanent injury, than an older man who would not have to suffer the handicap for so long a period."

Why does not that apply to damage in case of a dependent as well as in case of an injured person? If without the reduction, corresponding to decrease of real pecuniary loss on account of age, men past the middle time of life would be greatly handicapped by such circumstance as regards obtaining employment, why would they not be likewise prejudiced if liability to dependents was not likewise restricted? If, as said, the purpose was to change the common-law liability to that of actual pecuniary loss, how can the legislative language be fairly read to harmonize therewith, in case of an injured claimant and yet so as to make possible and even probable an increase of liability burden above actual pecuniary loss, in case of the claimant having been a dependent upon the employee? The very statement of these propositions suggests, at once, it seems, an answer condemning the decision from which I dissent.

VINJE, J. I concur in the foregoing dissenting opinion of Mr. Justice MARSHALL.